UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEO DALTON PRICE III,<br><br>Petitioner,<br><br>v.<br><br>JOEL MARTINEZ, Warden,[1]<br><br>Respondent. | Case No. 14-cv-05310-YGR (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; AND DENYING CERTIFICATE OF APPEALABILITY** |

Petitioner Leo Dalton Price III,[2] a state prisoner currently incarcerated at the Sierra Conservation Center, brings the instant *pro se* habeas action under 28 U.S.C. § 2254 to challenge his 2012 conviction and sentence rendered in the Santa Clara County Superior Court. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES Petitioner's claim in his petition for the reasons set forth below.

**I.    FACTUAL BACKGROUND**

The California Court of Appeal described the relevant facts as follows:

> The instant case arises out of an attack perpetrated by Price, [Kristina] Pelache, and Price's brother, Alex, on Price's second cousin, Greg. In 2011, Greg was homeless, and was sleeping in a shed on his 92-year-old aunt Carmen's property. Carmen is Price's grandmother. After the death of Price's father in 2011, Carmen told Price to not to come around her property anymore.
>
> Price resented the fact that Carmen permitted Greg to stay on her property, but would not allow Price to come around. On May 20, 2011, around 4:00 a.m. while Greg was sleeping in the storage shed on Carmen's property, Price yanked the door open. Price told Greg he should leave because he was not supposed to be there. Price told Greg to shut up, then called someone on his cell phone and said, "He's in here, get in here."
>
> After the cell phone call, Price's brother, Alex entered the shed and began punching Greg. Price also began punching Greg and kicking

---

[1] Joel Martinez, the current acting warden of the prison where Petitioner is incarcerated, has been substituted as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Petitioner is also known as "Sonny" Price. 2CT 270.

> him in the face. At some point during the attack, Pelache entered the shed and said, "Grandma turned the light on." Alex and Price covered Greg's mouth so he could not make any noise. Price told Pelache to go wait in the car. Before she left the shed, she told Greg he was "getting what you deserve." Alex and Price hit Greg a few more times, then left. When Greg was alone, he discovered that his wallet, car keys, phone, flashlight, and a buck knife were missing from the shed.
>
> As a result of the attack, Greg had cuts to his nose, lip and chest. The left side of his face was swollen, and the vision in his left eye was affected for weeks. Greg also lost several teeth, and had continuing headaches.
>
> After the attack, Price sent letters to Greg and Carmen apologizing for his actions, and asking for forgiveness. At trial, Price and Pelache denied they went to Carmen's house, and denied they attacked Greg.

*People v. Price*, No. H038436, 2013 WL 5886233, *1 (Cal. Ct. App. Nov. 4, 2013) (brackets added).

## II.   PROCEDURAL BACKGROUND

A Santa Clara County jury found Petitioner guilty of assault with force likely to cause great bodily injury pursuant to California Penal Code § 245(a)(1), battery with serious bodily injury pursuant to California Penal Code §§ 242, 243 (d), first degree burglary pursuant to California Penal Code §§ 459, 460(a), and false imprisonment pursuant to California Penal Code §§ 236, 237.[3]  2CT 392-398; 414-415. In addition, the jury found that Petitioner had personally inflicted great bodily injury within the meaning of California Penal Code §§ 12022.7(a), 1203(e)(3), 667, and 1192.7.  2CT 395. The jury also found that Petitioner had suffered a prior conviction within the meaning of California Penal Code §§ 667(b)-(i), and 1170.12.  2CT 399

On April 13, 2012, Petitioner was sentenced to serve 12 years in state prison. 2CT 472-474.

On June 8, 2012, Petitioner appealed the judgment to the California Court of Appeal. 2CT

---

[3] The jury also found Ms. Pelache, who was Petitioner's girlfriend, *see* 2CT 470, guilty of the same charges as Petitioner. *Price*, 2013 WL 5886233, *1. Petitioner and Ms. Pelache were tried together. *Id.* While the record indicates that Petitioner's younger brother, Alex, was also listed as a "co-defendant," *see* 2CT 470, it is not entirely clear whether Alex was tried separately or whether he was also found guilty of any charges stemming from the incident involving their second cousin, Greg.

504-505.

On November 4, 2013, the California Court of Appeal affirmed the conviction. *Price*, 2013 WL 5886233, at *5; Resp't Ex. 3.

On December 9, 2013, Petitioner filed a petition for review in the California Supreme Court. *See People v. Price*, Case No. S215075 (Dec. 9 2013).

On January 15, 2014, the California Supreme Court denied the petition for review. Resp't Ex. 4.

On December 3, 2014, Petitioner filed the instant habeas action in this Court. Dkt. 1.

On January 29, 2015, this Court issued an Order to Show Cause. Dkt. 10. Respondent filed an Answer. Dkt. 12. Petitioner filed a Traverse. Dkt. 19. The matter is fully briefed and ripe for adjudication.

## III.  LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *see Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, s*ee Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529

U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of section 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Even if constitutional error is established, habeas relief is warranted only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Penry v. Johnson*, 532 U.S. 782, 795-96 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). In applying the above standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Thus, a federal court will "look through" the unexplained orders of the state courts rejecting a petitioner's claims and analyze whether the last reasoned opinion of the state court unreasonably applied Supreme Court

1  precedent. *See Ylst*, 501 U.S. at 804-06; *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir.
2  2000). The last reasoned decision in this case is the state appellate court's unpublished disposition
3  issued on November 4, 2013.

## IV. LEGAL CLAIM

### A. Background

Petitioner contends that his constitutional rights to a fair trial were violated because the trial court refused to suspend proceedings "to allow Petitioner to be evaluated by a mental health professional after substantial evidence established that he decompensated during the course of trial." Dkt. 1 at 9.[4] Furthermore, Petitioner claims that the trial court erred when it did not declare a doubt as to his competency and failed to conduct a competency hearing pursuant to California Penal Code § 1368. *Id.* at 10-14. California Penal Code § 1368 states in relevant part: "If counsel informs the court that he or she believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing which is held pursuant to [California Penal Code] Sections 1368.1 and 1369." Cal. Penal Code § 1368(b). Specifically, Petitioner claims that his "conduct and demeanor at trial combined with [defense counsel Jessica Delgado, Esq.'s] representation to the court and the lack of any information about petitioner's mental health history raised a bona fide doubt regarding petitioner's competence to stand trial." Dkt. 1 at 13 (brackets added). Petitioner adds that "[f]ollowing his conviction, newly retained counsel [Genn Sugihara, Esq.] expressed additional concern with petitioner's ability to understand the proceedings against him and meaningfully assist counsel with the preparation of a motion for new trial and sentencing." *Id.* (brackets added). Petitioner further expands on Attorney Sugihara's concerns, stating as follows:

> Counsel explained that petitioner was unable to follow their conversations or respond appropriately to his inquiries. (2CT 440.) Counsel also informed the court that petitioner was under mental health care while in custody and had been receiving medication while in custody. ([2]CT 441.) Thus even if there was insufficient evidence during trial to support a declaration of doubt, the evidence at trial combined with the additional evidence presented prior to

---

[4] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

5

sentencing established reasonable doubt concerning petitioner's competency to proceed.

*Id.* (brackets added).

In rejecting this claim, the state appellate court gave the following background and analyzed this claim as follows:

> During the trial in this case, after the prosecution's case in chief and during the middle of the cross-examination of Price, Price's counsel declared a doubt as to Price's competency and asked the court to suspend proceedings pursuant to section 1368. Counsel argued that she thought Price was incompetent because he believed Greg had killed his father, made paranoid comments about the court system, commented in front of the jury that his counsel was not helping him, and commented about trying to save his brother, Alex from two life sentences. Counsel believed that defendant had "decompensated during the course of the trial probably due to the stress of the trial itself." Counsel also noted that defendant could not stop fidgeting at counsel table, and said "hello" to his grandmother, Carmen, when she was a witness at the trial.
>
> The court disagreed with Price's counsel's assessment, stating that in its view, Price was recalcitrant and uncooperative, but was not incompetent to stand trial. Moreover, the court noted that Price's disagreement with his counsel's "very good advice" did not make him incompetent. The court stated that based on its own observation of Price's behavior, it had no doubt about Price's competency.
>
> At sentencing, Price had a different defense counsel, who also declared a doubt as to Price's competency, and requested that the court appoint doctors to evaluate Price under section 1368. The court denied Price's counsel's request noting that Price had been interviewed for the probation report and placed in the general jail population without any question being raised by either probation or jail personnel about Price's competency. The court concluded that Price was competent.
>
> Consistent with the due process clause of the Fourteenth Amendment and state law, the state may not try or convict a mentally incompetent defendant. (*Drope v. Missouri* (1975) 420 U.S. 162, 171-172; § 1367 et seq.) Under the state standard for competency, which is essentially the same as the federal standard, a defendant who is "unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner" is incompetent to stand trial. (§ 1367; *see Dusky v. United States* (1960) 362 U.S. 402 ["'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding'" and a "'rational as well as factual understanding of the proceedings against him'"].)
>
> If "a doubt arises in the mind of the judge as to the mental competence of the defendant" at any time prior to judgment, the court is required to conduct a hearing pursuant to section 1368 to determine the defendant's competence. (§ 1368; *People v.*

*Rodrigues* (1994) 8 Cal. 4th 1060, 1111.)  In particular, the trial court is required to conduct a section 1368 hearing to determine a defendant's competency "whenever substantial evidence of incompetence has been introduced. [Citations.]  Substantial evidence is evidence that raises a reasonable doubt about the defendant's competence to stand trial. [Citations.]" (*People v. Frye* (1998) 18 Cal. 4th 894, 951-952.)  By contrast, evidence that "merely raises a suspicion that the defendant lacks present sanity or competence but does not disclose a present inability because of mental illness to participate rationally in the trial is not deemed 'substantial' evidence requiring a competence hearing." (*People v. Deere* (1985) 41 Cal. 3d 353, 358, *disapproved on other grounds in People v. Bloom* (1989) 48 Cal. 3d 1194, 1228, fn. 9.)

In determining whether there is substantial evidence of incompetence, the court must consider all of the relevant circumstances, including defendant's behavior and demeanor, prior medical opinion, defense counsel's experience, and the court's own observations. (*Drope v. Missouri*, *supra*, 420 U.S. at p. 180; *People v. Howard* (1992) 1 Cal. 4th 1132, 1164.)  "There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." (*Drope v. Missouri*, *supra*, 420 U.S. 162, 180.)  However, "more is required to raise a doubt than mere bizarre actions [citation] or bizarre statements [citation] or statements of defense counsel that defendant is incapable of cooperating in his [or her] defense [citation] or psychiatric testimony that defendant is immature, dangerous, psychopathic, or homicidal or such diagnosis with little reference to defendant's ability to assist in his own defense [citation]." (*People v. Laudermilk* (1967) 67 Cal. 2d 272, 285.)  And, the burden is on the defendant to establish that he or she is not competent to stand trial.  (§ 1369, subd. (f); *People v. Marshall* (1997) 15 Cal. 4th 1, 31.)  On appeal, we give the trial judge's determination great deference.  "An appellate court is in no position to appraise a defendant's conduct in the trial court as indicating insanity, a calculated attempt to feign insanity and delay the proceedings, or sheer temper." (*People v. Merkouris* (1959) 52 Cal. 2d 672, 679.)

"'A trial court's decision whether or not to hold a competence hearing is entitled to deference, because the court has the opportunity to observe the defendant during trial. [Citations.]  The failure to declare a doubt and conduct a hearing when there is substantial evidence of incompetence, however, requires reversal of the judgment of conviction. [Citations.]' [Citation.]" (*People v. Lewis* (2008) 43 Cal. 4th 415, 525.)

The trial court in this case did not declare a doubt as to Price's competency, thus the question is whether there was substantial evidence of his incompetence demonstrated.  Price contends his incompetence was evidenced by his own behavior.  For example, he points to the fact that he had difficulty following his counsel's questions on direct examination, and responded with inappropriate answers.  Price's answers on direct included testimony that the judicial system was working against him, he was convicted of a

7

> prior felony because the county turned his family against him, that he was forced to defend himself because defense counsel would not, and that Greg falsely accused him of the attack because Greg killed Price's father and did not want him to know about it. Price also testified that he wrote the apology letters to Carmen and Greg to appeal to the "Christian[s]" on the jury. Price asserts his testimony and behavior at trial was "bazaar, paranoid, and nonsensical," and necessitated a hearing to determine his competency.
>
> Price asserts that in addition to his behavior at trial, the circumstances surrounding his sentencing also constitute substantial evidence of Price's incompetence. At the time of sentencing, Price's counsel informed the court that Price was unable to understand the proceedings against him and meaningfully assist counsel with preparation of a motion for a new trial and sentencing. Counsel also stated that Price was under mental health care and was receiving medication while in custody. Price asserts that this information, coupled with the prior declaration of doubt by counsel during trial, was sufficient to establish substantial evidence of Price's incompetence.
>
> Based on a review of the record of Price's demeanor and behavior, we do not find substantial evidence of his incompetence. Although Price did make strange comments during his testimony, something more than bizarre statements and behavior is needed to raise a doubt concerning a defendant's competence. (*People v. Laudermilk*, *supra*, 67 Cal. 2d at p. 285.) There is not substantial evidence demonstrating Price did not understand the nature of the proceedings against him or that he could not assist counsel in his own defense. (§ 1367; *see Dusky v. United States*, *supra*, 362 U.S. 402.) In sum, Price has failed to demonstrate that the court abused its discretion in declining to hold a competency hearing pursuant to section 1368.

*Price*, 2013 WL 5886233, *2-3.

### B. Applicable Law

A criminal defendant may not be tried unless he is competent. *Godinez v. Moran*, 509 U.S. 389, 396 (1993). To be competent to stand trial, a defendant must have the "capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope v. Missouri*, 420 U.S. 162, 171 (1975).

The conviction of a defendant while legally incompetent violates due process. *Pate v. Robinson*, 383 U.S. 375, 378 (1966). A claim that a defendant was actually incompetent to stand trial is a "substantive incompetence claim." *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2004); *see also Williams v. Woodford*, 384 F.3d 567, 607-610 (9th Cir. 2004) (in capital habeas case, affording significant weight to defense counsel's firm belief that defendant was competent and, in the absence of "persuasive" evidence to the contrary, concluding that defendant did not

establish a violation of his right not to be tried and convicted while incompetent).

The test for competence to stand trial is whether the defendant demonstrates the ability "'to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Godinez*, 509 U.S. at 396 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). Due process requires a trial court to order a psychiatric evaluation or conduct a competency hearing *sua sponte* if the court has a good faith doubt concerning the defendant's competence. *Pate*, 383 U.S. at 385; *United States v. Dreyer*, 705 F.3d 951, 967 (9th Cir. 2013); Cacoperdo v. Demosthenes, 37 F.3d 504, 510 (9th Cir. 1994); *United States v. Mitchell*, 502 F.3d 931, 986 (9th Cir. 2007). This responsibility continues throughout trial. *See Drope*, 420 U.S. at 181. Under *Drope* and *Pate*, the test for such a bona fide doubt is "whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *De Kaplany v. Enomoto*, 540 F.2d 975, 983 (9th Cir. 1976) (en banc).

> On review, [the] inquiry is not whether the trial court could have found the defendant either competent or incompetent, nor whether [the reviewing court] would find the defendant incompetent . . . . Rather, the record is reviewed "to see if the evidence of incompetence was such that a reasonable judge would be expected to experience a genuine doubt respecting the defendant's competence."

*Mitchell*, 502 F.3d at 986 (quoting *Chavez v. United States*, 656 F.2d 512, 516 (9th Cir. 1981)). "In reviewing whether a state trial judge should have conducted a competency hearing, we may consider only the evidence that was before the trial judge." *McMurtrey v. Ryan*, 539 F.3d 1112, 1119 (9th Cir. 2008). "'[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required,' and 'one of these factors standing alone may, in some circumstances, be sufficient.'" *Maxwell v. Roe*, 606 F.3d 561, 568 (9th Cir. 2010) (quoting *Drope*, 420 U.S. at 180). However, a defendant's disagreement with his attorneys and unwillingness to control his temper in the courtroom are insufficient to create bona fide doubt as to defendant's competence. *United States v. White*, 670 F.3d 1077, 1084-85 (9th Cir. 2012).

**C.     Analysis**

As mentioned above, in reviewing Petitioner's claim of error resulting from the trial court's failure to hold a competency hearing, this Court may consider only the evidence that was actually before the trial judge. *See McMurtrey*, 539 F.3d at 1119; *Maxwell*, 606 F.3d at 566, 568. Further, the state court's determination that the evidence did not require a competency hearing under *Pate* is a factual determination to which this Court must defer unless it is unreasonable under 28 U.S.C. § 2254(d)(2). *See Torres v. Prunty*, 223 F.3d 1103, 1105 (9th Cir. 2000); *cf. Maggio v. Fulford*, 462 U.S. 111, 117 (1983) (per curiam).

It appears that the following evidence—including, Petitioner's demeanor and behavior during his testimony and throughout the remaining proceedings, the declaration of doubt by his defense counsel at that point during trial, the circumstances surrounding Petitioner's sentencing, and the statements of his other defense counsel at sentencing relating to Petitioner's mental health care—was the only evidence considered by the trial court and, therefore, the only evidence this Court is to consider in determining whether the trial court should have ordered a competency hearing. *See McMurtrey*, 539 F.3d at 1119. A review of this evidence shows no reason why the trial court should have had a good faith doubt regarding Petitioner's competence, as further explained below. *See Maxwell*, 606 F.3d at 568.

In *Maxwell*, the Ninth Circuit granted federal habeas relief to a petitioner where the trial court failed to conduct a second competency hearing despite substantial evidence that the petitioner's psychiatric condition had worsened following an initial competency finding. *Id.* This Court has considered the Ninth Circuit's opinion and finds it distinguishable from the present case. Maxwell was ordered to undergo a competency determination after defense counsel expressed doubt about his ability to stand trial. *Id.* at 564. Four of five psychiatrists concluded that Maxwell was malingering, or feigning a psychosis, while the fifth concluded that Maxwell was indeed incompetent to stand trial. *Id.* at 565. The trial judge subsequently found Maxwell competent and reinstated criminal proceedings. *Id.* By the time trial commenced thirteen months later, Maxwell's behavior had become uncontrollable, and defense counsel repeatedly alerted the court that Maxwell's condition was worsening and that communication with Maxwell was severely

strained. *Id.* at 565. During pretrial proceedings, Maxwell made noises and blurted out obscenities. *Id.* at 569. Maxwell refused to take his medication and had assaulted another inmate with a knife. *Id.* Following one physical and verbal outburst in the courtroom, the trial judge found that Maxwell posed a danger and had him removed. *Id.* at 570. As a result, the trial proceeded in Maxwell's absence. *Id.* at 565. Halfway through the trial, Maxwell attempted suicide with a razor blade and was placed by hospital staff on a seventy-two hour "psychiatric hold" or detention that later was extended to a two-week hold. *Id.* at 570-71. The Ninth Circuit concluded that "Maxwell's attempted suicide—taken in the context of his pre-trial behavior, strained communication with defense counsel, mental health history, antipsychotic medications, and subsequent psychiatric detentions—would have raised a doubt in a reasonable judge." *Id.* at 571. The Ninth Circuit also observed that, had the trial court conducted an additional competency hearing, it "would have discovered further information suggesting Maxwell's incompetence," specifically the reports from the psychiatric holds explicitly finding that Maxwell was "actively psychotic" and that he had been "involuntary [sic] administered heavy doses of [an] antipsychotic drug." *Id.* at 573. Additionally, the Ninth Circuit noted that the report first relied upon by the trial judge, which concluded Maxwell had been malingering, was "thirteen months old," "was itself based on aging psychiatric evaluations that were, by the time of Maxwell's trial, eighteen months old" and that Maxwell's condition had deteriorated significantly in the intervening time. *Id.* at 575.

Here, in contrast to *Maxwell*, the trial court noted that defense counsel did not declare a doubt as to Petitioner's competency until a third of the way through his cross-examination. 7RT 561. Prior to that time, there was no indication before the trial court that Petitioner could not understand the nature of the proceedings or cooperate with defense counsel. In his traverse, Petitioner points out that "[d]uring his direct and cross-examination, [he] provided nonsensical answers, exhibited abnormal paranoia about the justice system and its players, made comments harmful to his defense, and expressed paranoid, delusional beliefs and thoughts." Dkt. 19 at 13 (citing 4 RT 288, 290-291, 295, 299, 301, 303, 305, 312, 314). However, while the state appellate court noted that Petitioner "did make strange comments during his testimony," that court

11

determined that "something *more* than bizarre statements and behavior is needed to raise a doubt concerning a defendant's competence." *Price*, 2013 WL 5886233, *3 (emphasis added). The record shows that during his testimony, Petitioner recalled the day of the crime and testified about facts which, if believed by the jury, would have supported his theory of defense—i.e., denying being at the scene and denying attacking Greg. 4RT 291, 303-313. The trial court considered defense counsel's basis for requesting suspension of criminal proceedings—Petitioner's refusal to listen to her advice and his bizarre statements and behavior during his testimony—and determined that such a basis did not constitute substantial evidence to raise a reasonable doubt about his ability to stand trial. 4RT 320. A difficult and uncooperative client is not incapable of assisting in his own defense. *See United States v. Neal*, 776 F.3d 645, 657 (9th Cir. 2015). The trial court noted that Petitioner was "a recalcitrant client," but it saw no "incompetency whatsoever." 4RT 319-320. As explained above, after the trial and in preparation for sentencing, Petitioner was interviewed by probation and placed in the general jail population, and neither the probation officer nor jail personnel expressed a doubt about his competency. 7RT 556-561. While Petitioner's other defense counsel at sentencing stated that Petitioner was under mental health care and was receiving medication while in custody, the present case is distinguishable from *Maxwell* because no experts opined that Petitioner suffered from a mental illness or that his competence was not contingent upon his continued use of medication. Therefore, the state appellate court was reasonable to conclude that there was "not substantial evidence demonstrating [Petitioner] did not understand the nature of the proceedings against him or that he could not assist counsel in his own defense." *Id.*; s*ee Stanley v. Cullen*, 633 F.3d 852, 861 (9th Cir. 2011) (not unreasonable for trial court to conclude there was not enough evidence before it to raise a doubt about defendant's competence where defendant was coherent in his testimony and colloquies with the court, and state court judges indicated his demeanor in courtroom did not raise a doubt about his competency).

In sum, there is nothing in the record to show that Petitioner could not assist counsel or understand the proceedings against him at the time of trial. *See Godinez*, 509 U.S. at 396. Especially in light of the highly deferential standard this Court must give to the state court's

factual finding, *see Stanley*, 633 F.3d at 859, the state appellate court's determination that no competency hearing was required was a reasonable determination of the facts under 28 U.S.C. § 2254(d)(2), and its decision rejecting this claim was not contrary to, or an unreasonable application of, federal law as established by *Drope* and *Pate*. *See* 28 U.S.C. § 2254(d). Therefore, Petitioner is not entitled to habeas relief on this claim, and it is DENIED.

## V. CERTIFICATE OF APPEALABILITY

No certificate of appealability is warranted in this case. For the reasons set out above, jurists of reason would not find this Court's denial of Petitioner's claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

## VI. CONCLUSION

For the reasons outlined above, the Court orders as follows:

1. Petitioner's claim in his petition is DENIED, and a certificate of appealability will not issue. Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

2. The Clerk of the Court shall enter judgment, terminate any pending motions and close the file.

IT IS SO ORDERED.

Dated: June 28, 2016

_____
YVONNE GONZALEZ ROGERS
United States District Judge